[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. NATURE OF THE PROCEEDINGS
The plaintiff, Jesse Jutkowitz, appeals pursuant to General Statutes § 19a-12 and § 4-183 from a decision of the defendant, the State Board of Chiropractic Examiners, suspending his chiropractic license and fining him, both pursuant to General Statutes § 20-29. The Board of Chiropractic Examiners was presented with a statement of charges from the Department of Health Services. The present action is an administrative agency appeal brought under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.
II. BACKGROUND
The Department of Health Services (Department) regulates the professional health boards enumerated in General Statutes § 19a-14(b). That is, the Department acts as a supervisory umbrella department for certain boards and commissions. See Nanavati v.Dept. of Health Services, 6 Conn. App. 473, 474, 506 A.2d 152
(1986). General Statutes § 19a-14(b)(13) lists the State Board of Chiropractic Examiners as one such board. The State Board of Chiropractic Examiners is established under General Statutes § 20-25. Pursuant to § 19a-17, health boards and commissions are authorized to take disciplinary action, upon a finding of good cause, against health practitioners under their jurisdiction. CT Page 5253-C General Statutes § 20-29 authorizes the State Board of Chiropractic Examiners to take any disciplinary action enumerated in General Statutes § 19a-17. For instance, under § 19a-17, the Board of Chiropractic Examiners may revoke or suspend a license or permit, censure or reprimand a practitioner, place a practitioner on different forms of probationary status, or assess a civil penalty. These forms of discipline may be ordered "singly or in combination . . . upon finding of the existence of good cause. . . ." General Statutes § 19a-17. General Statutes § 20-29 recites a litany of reasons for which disciplinary action may be taken by the Board of Chiropractic Examiners (Board). Relevant to this case, section § 20-29 allows disciplinary action to be taken because of "incompetent or negligent conduct in the practice of chiropractic . . . ." Pursuant to § 19a-12, any person aggrieved by a decision rendered by a board or commission listed in § 19a-14(b) may appeal the decision pursuant to § 4-183.
The charges brought against the plaintiff resulted from the treatment of patient J. Timothy Oliver and a subsequent complaint letter sent by him to the Department. (Return of Record [ROR], Item A., p. 54-55: Complaint Letter.) The complaint letter of patient Oliver prompted the Department to investigate the complaint. Sometime later, the Department decided to institute formal proceedings against the plaintiff and brought a statement of charges against the plaintiff and sent a notice of hearing. (ROR, Item 3, p. 37-38: Statement of Charges; ROR, Item 3, p. 36: Notice of Hearing.) The complaint was in three counts. After the agency hearing, the third count was dismissed for insufficiency of evidence. (ROR, p. 8: Board's Final Decision.)
The first count of the Department's statement of charges alleged in relevant part: "2. That on or about December 1 and 2, 1988 [Jesse Jutkowitz] examined, diagnosed and or treated J. Timothy Oliver. 3. The x-rays taken were inappropriate in one or more of the following ways: a. there was insufficient clinical indication, and/or b. they were excessive in number. 4. This constitutes incompetent or negligent conduct in the practice of chiropractic and therefore violates Connecticut General Statutes § 20-29." (ROR, Item 3, p. 37.) The second count of the statement of charges alleged in relevant part: "3. [Jesse Jutkowitz] did not examine [the patient] in one or more of the following ways: a. he did not take the appropriate history based on the patient's symptoms and employment; and/or b. he did not perform appropriate tests for carpal tunnel syndrome, even though CT Page 5253-D he should have done so based on the patient's symptoms and employment. 4. This constitutes incompetent or negligent conduct in the practice of chiropractic and therefore violates Connecticut General Statutes § 20-29." (ROR, Item 3, p. 37.)
The Board held a hearing on the statement of charges. The patient, J. Timothy Oliver, testified. On the first and second counts of the statement of charges, the Board found that the plaintiff's conduct in the treatment of patient Oliver was "incompetent and negligent" in violation of General Statutes § 20-29. (ROR, p. 6-8.) In sum, the Board found that: the plaintiff took unwarranted or excessive x-rays of the patient in light of the patient's complaints of pain and the plaintiff's diagnosis of the patient; that the patient was unnecessarily exposed to x-rays; and that the medical history taken of the patient was incomplete because no history of the symptoms or of the physical demands of the patient's occupation had been taken. (ROR, p. 7-8.) Regarding the first count, the Board suspended the plaintiff's license for one year and assessed a civil penalty of one thousand dollars. (ROR, p. 9.) Regarding the second count, the Board suspended the plaintiff's license for one year and assessed a civil penalty of one thousand dollars. (ROR. p. 9.) The Board ordered that "the suspensions shall be served concurrently for an aggregate suspension of one year." (ROR, p. 9.)
III. JURISDICTION
"Appeals to courts from administrative agencies exist only under statutory authority." (Citations omitted; internal quotation marks omitted.) Killingly v. Connecticut SitingCouncil, 220 Conn. 516, 521, 600 A.2d 752 (1991); see alsoCitizens Against Pollution Northwest, Inc. v. Connecticut SitingCouncil, 217 Conn. 143, 152, 584 A.2d 1183 (1991) (same); Tarnopolv. Connecticut Siting Council, 212 Conn. 157, 163, 561 A.2d 931
(1989) (same). "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions which create it." (Citations omitted; internal quotation marks omitted.) Citizens Against Pollution Northwest,Inc. v. Connecticut Siting Council, supra, 152; see also Tarnopolv. Connecticut Siting Council, supra, 163-64. "Failure to comply strictly with the statutory provisions by which a statutory right to appeal is created will subject an appeal to dismissal."Killingly v. Connecticut Siting Council, supra, 522. "Nevertheless, where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring CT Page 5253-E jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) Id.
A. Aggrievement
Unless a party can establish aggrievement, he has no standing to appeal under the Uniform Administrative Procedure Act. See Light Rigging Co. v. Dept. of Public Utility Control,219 Conn. 168, 172, 592 A.2d 386 (1991) (pleading and proof of aggrievement required). Here, the plaintiff's chiropractic license is in jeopardy of being suspended and a civil penalty has been assessed.[1] As such, the plaintiff has clearly been aggrieved.
B. Exhaustion
"A plaintiff seeking a right to appeal under [General Statutes] § 4-183 must exhaust all administrative remedies."Cannata v. Dept. of Environmental Protection, 215 Conn. 616, 622,577 A.2d 1017 (1990). If an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction over the action. Cannata v. Dept. ofEnvironmental Protection, 215 Conn. 616, 622; Greater BridgeportTransit District v. Commission on Human Rights Opportunities,211 Conn. 129, 131, 557 A.2d 925 (1989). "Because the exhaustion doctrine implicates subject matter jurisdiction, [a court] must decide as a threshold matter whether the doctrine requires dismissal of the plaintiff['s] claim." (Citations omitted; internal quotation marks omitted.) Pet v. Dept. of HealthServices, 207 Conn. 346, 351, 542 A.2d 672 (1988); see alsoConcerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556,529 A.2d 666 (1987) (same).
In the present case, there is no indication that the plaintiff did not exhaust his administrative remedies.
C. Timeliness
"A statutory right to appeal may be exercised only by strict compliance with the statutory provisions by which it is created."Miller v. Conservation Commission, 27 Conn. App. 590, 595,607 A.2d 900 (1992). Statutory time limits must be strictly complied with, otherwise a court will lack subject matter jurisdiction. Id. Sections 4-183(a) to (m) govern appeals of agency decisions to the superior court. A copy of the appeal shall be served on CT Page 5253-F the agency that rendered the final decision and filed with the clerk of the Superior court within forty-five days after the mailing or personal delivery of the final decision. General Statutes § 4-183(c). The agency is to be served at its office or at the office of the attorney general in Hartford. General Statutes § 4-183(c). A copy of the appeal also shall be served on each party listed in the final decision at the address shown in the decision within forty-five days. General Statutes § 4-183(c). Failure to make service within the forty-five day period on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal. General Statutes § 4-183(c). Service of the appeal shall be made by certified or registered mail, or personal service by a proper officer or indifferent person. General Statutes § 4-183(c).
Not later than fifteen days after filing the appeal, the person appealing shall file or cause to be filed with the clerk of the court proof of service, or if service was not made on a party, the reason for failure to make service. General Statutes § 4-183(d). The court may dismiss the appeal, after hearing, if the failure to make service prejudices the agency or any party to the appeal. General Statutes § 4-183(d); see also General Statutes § 4-183(e).
Within either thirty days after service of the appeal or such further time as the court may allow, the agency shall provide the court a copy of the entire record of the proceeding appealed from. General Statutes § 4-183(g).
"The right to appeal from an administrative decision is triggered by the mailing of . . . notice of the final decision of the agency." (Citations omitted; internal quotation marks omitted.) Rogers v. Commission on Human Rights Opportunities,195 Conn. 543, 547, 489 A.2d 368 (1985). The date of the mailing of notice of the final decision is the starting point for determining whether service was timely. Royce v. Freedom ofInformation Commission, 177 Conn. 584, 586, 418 A.2d 939 (1979). "An administrative appeal is filed and pending when it is returned to the court." Scinto v. State Codes StandardsCommittee, 24 Conn. App. 44, 48, 585 A.2d 701 (1991).
Here, the plaintiff has complied with all statutory time limits and procedures.
D. Citation
CT Page 5253-G
"In administrative appeals, the citation is the writ of summons that directs the sheriff or some other proper officer to seek out the defendant agency and to summon it to a particular sitting of a particular court on a specified day." (Citation omitted; internal quotation marks omitted.) Tolly v. Dept. ofHuman Resources, 225 Conn. 13, 18, 621 A.2d 719 (1993). Section4-183(c) provides that "service shall be made by one of two alternative methods: `by (1) United States mail, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer, or (2) personal service by a proper officer or indifferent person making service in the manner as complaints are served in ordinary civil actions.'" Id., 19-20.
"Personal service pursuant to § 4-183(c)(2) requires, by clear implication, a citation commanding the `proper officer or indifferent person' to make service `in the same-manner as complaints are served in ordinary civil actions.'" Id., 20. Thus, personal service without a citation is a nullity. Id.; see also Hillman v. Greenwich, 217 Conn. 520, 526, 527 A.2d 99 (1991) (a citation is an administrative appeal is analogous to a writ of summons in a civil action). However, in situations where service of an administrative appeal is made by certified mail, pursuant to General Statutes § 4-183(c)(1), a citation is not required because service is made "without the use of a sheriff or other officer."Tolly v. Dept. of Human Resources, supra, 225 Conn. 20-21. In other words, mail service made pursuant to § 4-183(c)(1) takes the place of a citation. Id.
"Failure to cite a necessary party renders the appeal dismissable because of a lack of jurisdiction." (Citation omitted; internal quotation marks omitted.) Nanavati v. Dept. ofHealth Services, supra, 6 Conn. App. 474. Where "the board was the only agency that took action by which the plaintiff claimed to be aggrieved, it was the board, not the department of health services which was the proper party defendant." Id., 475-76. Failure to cite a board or commission which is authorized to discipline persons licensed by it is a jurisdictional defect. See id., 475-76.
The plaintiff, in the present appeal, cited all the necessary parties and served all the necessary defendants pursuant to General Statutes § 4-183(c)(2). CT Page 5253-H
The use of an improper form to commence an appeal, so long as it contains a proper citation, and is signed by a competent authority, does not implicate the jurisdiction of the court.McQuillan v. Dept. of Liquor Control, 216 Conn. 667, 671-72,583 A.2d 633 (1990); Chestnut Realty, Inc. v. Commission on HumanRights Opportunities, 201 Conn. 350, 356, 514 A.2d 749 (1986). "If the form [that was used] clearly apprises all concerned that a lawsuit is being brought, and contains notice of the return date, and the requirement for filing an appearance, and also directs a competent authority to summon the defendant, the then policy of providing notice to the defendant has been served."McQuillan v. Dept. of Liquor Control, supra, 672-73; see alsoChestnut Realty, Inc. v. Commission on Human Rights Opportunities, supra, 356-57. "Absent an affirmative showing of prejudice on the part of the defendant . . . the mistaken use of an [a form] does not warrant the dismissal of the administrative appeal." (Internal quotation marks omitted.) McQuillan v. Dept.of Liquor Control, supra, 673, quoting Chestnut Realty, Inc. v.Commission on Human Rights Opportunities, supra, 357.
Here, the plaintiff used the wrong form to commence this appeal. The plaintiff violated Practice Book § 49(4) by improperly using Practice Book Form 103.1 (JD-CV-1) to commence this administrative appeal. Our Supreme Court, however, has allowed this practice to stand. McQuillan v. Dept. of LiquorControl, supra, 216 Conn. 671-72; Chestnut Realty, Inc. v.Commission on Human Rights Opportunities, supra, 201 Conn. 356. As such, it is axiomatic that this court must follow this precedent.
IV. SCOPE OF REVIEW
The Uniform Administrative Procedure Act (UAPA) governs judicial review of an administrative agency's action. See Mikov. Commission on Human Rights Opportunities, 220 Conn. 192,200, 596 A.2d 396 (1991); see also Connecticut Light Power Co.v. Dept. of Public Utility Control, 219 Conn. 51, 57,591 A.2d 1231 (1991). The scope of that review is very limited.Connecticut Light Power Co. v. Dept. of Public Utility Control,
supra, 57. Under the UAPA, the "substantial evidence" rule governs judicial review of administrative factfinding. Miko v.Commission on Human Rights Opportunities, supra, 200. Substantial evidence exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred. Connecticut Light Power Co.CT Page 5253-Iv. Dept. of Public Utility Control, supra, 57; ConnecticutBuilding Wrecking Co. v. Carothers, 218 Conn. 580, 593,590 A.2d 447 (1991). In determining whether an administrative finding is supported by "substantial evidence," the reviewing court must defer to the agency's assessment of the credibility of witnesses.Miko v. Commission on Human Rights Opportunities, supra, 200.
The appeal shall be confined to the record before the agency. If the record fails to show alleged irregularities in procedure before the agency or facts necessary to establish aggrievement, proof on such issues may be taken in the court. General Statutes § 4-183(i). The court shall not substitute its judgment for that of the agency as to the weight-of the evidence on questions of fact. General Statutes § 4-183(j). The decision of the agency shall be affirmed unless the court finds that substantial rights of the appellant have been prejudiced because of the reasons specified in §§ 4-183(j)(1) through (6). If such prejudice is found, the court shall sustain the appeal, and, if appropriate, may render a judgment under § 4-183(k) or remand for further proceedings.
"Ultimately, the question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the action taken." (Citations omitted; internal quotation marks omitted.) Miko v. Commissionon Human Rights Opportunities, supra, 220 Conn. 201. The findings of the agency should be upheld if supported by substantial and competent evidence, and the reviewing court should not try the case de novo, adjudicate the facts, or substitute its own discretion for that of the agency. Id.
"With regard to questions of fact, it is neither the function of the trial court nor of [the Supreme Court] to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) Connecticut Light Power Co.v. Dept. of Public Utility Control, supra, 219 Conn. 57-58. Ifany reasons support the agency's decision, the decision must be upheld. Griffin Hospital v. Commission on Hospitals HealthCare, 200 Conn. 489, 498, 512 A.2d 199, appeal dismissed,479 U.S. 1023, 107 S.Ct. 781, 93 L.Ed.2d 819 (1986). CT Page 5253-J
V. AGENCY DECISION PROCESS
After taking evidence, an agency is to analyze it and make findings of fact and conclusions of law. Connecticut Natural GasCorp. v. Public Utilities Control Authority, 183 Conn. 128, 137,439 A.2d 282 (1981). An agency may employ its experience, technical competence, and specialized knowledge in analyzing and evaluating the evidence. Id. Members of the agency may communicate with one another and utilize the advise of personal assistants. Id. Competent subordinates may sift and analyze evidence, recommend findings of fact and conclusions of law and draft orders for the agency. Id., 138. Administrative tribunals are not bound by rules of evidence and may consider evidence which would normally be incompetent in a judicial proceeding as long as it reliable and probative. Tomlin v. Personnel AppealBoard, 177 Conn. 344, 348, 416 A.2d 1205 (1979). "In determining whether an administrative finding is supported by substantial evidence, a court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part. . . . An agency composed of [experts] is entitled, furthermore, to rely on its own expertise within the area of its professional competence. Basically, an agency is not required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Citations omitted; internal quotation marks omitted.) Connecticut Building Wrecking Co. v.Carothers, supra, 218 Conn. 593.
"Although an agency board or commission consisting of lay persons may not completely disregard the only expert evidence available on an issue . . . the same is not true where the board or commission is comprised of experts. With the facts of the conduct before it, [a] board [is] competent to determine whether that conduct was compatible with professional standards." (Citations omitted.) Fleischman v. Board of Examiners inPodiatry, 22 Conn. App. 193, 197-98, 576 A.2d 1308 (1990).
VI. MERITS OF THE APPEAL
The crux of the plaintiff's appeal is as follows: (1) the plaintiff argues that the standard of care of a health care professional is a fact which must be proven by either expert testimony or it must be officially noticed, and the Board did not CT Page 5253-K hear evidence on the standard of care owed to patient Oliver; (2) that the Board must have officially noticed or considered evidence outside of the record because no evidence was presented regarding the standard of care, and no evidence was presented on whether the plaintiff's conduct breached the applicable standard of care; as such, the plaintiff argues that the Board was required, pursuant to General Statutes § 4-178(7)[2], to notify him of any material officially noticed by the Board; and, in the alternative, (3) the discipline ordered by the Board was unreasonably harsh. The court will address these claims seriatim.
The first of the plaintiff's arguments can be dismissed with the application of precedent from our Supreme Court. "As long as the board hearing and deciding a licensing matter is composed of at least a majority of experts in the field involved in the case, the board may rely on its own expertise in evaluating charges against persons licensed by the board and the requisite standardof care by which to judge such cases." (Emphasis added.)Levinson v. Board of Chiropractic Examiners, 211 Conn. 508, 525,560 A.2d 403 (1989). In the instant case, the panel of the Board that decided the case was composed of five members — three of those members were doctors of chiropractic. Therefore, the Board was allowed to rely on its own expertise to evaluate the charges and evidence, and it was competent to determine whether the conduct was within the applicable professional standards of care.
"[B]ecause the board itself was expert, expert opinions of other physicians offered before it could have been disregarded by it, and from a practical standpoint would in all probability have had little, if any, effect in bringing it to a decision at variance with its own conclusion as to a practitioner's competence. . . . The provision in General Statutes § 4-178(4) [now § 4-178(8)] that in a contested case `the agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence' further diminishes this claim." (Citations omitted.) Id., 531.
The Board's finding of the plaintiff's "incompetent and negligent conduct in the practice of chiropractic," and the disciplinary action ordered, was supported by ample evidence on the record. The Board had before it substantial and competent evidence to conclude that the plaintiff breached the standard of care in the practice of chiropractic. Some of this evidence, inter alia, was as follows: the patient file of J. Timothy CT Page 5253-L Oliver; (ROR, Item 1A, p. 62-65.); x-rays of patient Oliver (ROR, p. Item 5 (on file at Department)); statement of care and treatment from Dr. Jutkowitz; (ROR, Item 4, p. 40-43.); letter from patient Oliver to Department; (ROR, Item A, p. 54-55.); and extensive testimony from the agency hearing; (ROR, p. 95-274: Transcripts of Agency Hearing.); including testimony from the patient. (ROR, p. 110-135.)
The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. Fleischman v. Board of Examiners inPodiatry, supra, 22 Conn. App. 197; Leib v. Board of Examinersfor Nursing, 177 Conn. 78, 86, 411 A.2d 42 (1979). The Board's findings are substantially supported by the record, and this court will not disturb that decision. Connecticut Light Powerv. Dept. of Public Utility Control, supra, 219 Conn. 57.
Therefore, the court finds that the Board did not act unreasonably, arbitrarily, illegally or in an abuse of its discretion by finding the plaintiff responsible for "incompetent and negligent conduct in the practice of chiropractic." Id., 57-58. In addition, the court finds that the decision of the Board has not prejudiced the substantial rights of the plaintiff based on any of the reasons specified in §§ 4-183(j)(1) through (6).
The court next addresses the plaintiff's argument that the Board violated General Statutes § 4-178(7)[3] by not notifying him of materials that were allegedly officially noticed by the Board. General Statutes § 4-178(7) reads as follows: "[P]arties shall be notified in a timely manner of any material noticed, including any agency memoranda or data, and they shall be afforded an opportunity to contest the material so noticed." (Emphasis added.)
Once again, this argument is similar to the plaintiffs' argument in Levinson and it can be disposed of in the same manner. In Levinson, our Supreme Court stated as follows: "The plaintiffs' . . . claim is that in the absence of expert testimony the board was required to take official notice and to notify the [plaintiffs]. This claim relies on General Statutes §4-178(4) [now § 4-178(6) and (7)], which provides in part: `[N]otice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or CT Page 5253-M by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed.'. . . We agree with Professor Gellhorn's analysis: `[I]n administrative adjudication, official notice is frequently confused with the process of decision-making. In reaching a conclusion, the examiner or agency may rely on its special skills, whether they include particular expertise in engineering, economics, medicine, or electricity, just as a judge may freely use his legal skills in reading statutes and applying decided cases in the preparation of his opinion. But such evaluations are not within the conceptof official notice. Official notice is concerned with theprocess of proof not with the evaluation of evidence. The difference between an administrative tribunal's use of non-record information included in its expert knowledge, as a substitute for evidence or notice, and its application of its background inevaluating and drawing conclusions from the evidence that is inthe record, is primarily a difference of degree rather than of kind. In principle, reliance upon the examiner's knowledge in the process of proof is permissible only within the confines of official notice, whereas the examiner's use of his experience in evaluating "proof" that has been offered is not only unavoidable but, indeed, desirable. The troublesome problem, as with most questions of law, is that a fine line cannot be drawn with precision.' (Emphasis in original.) E. Gellhorn, "Rules of Evidence and Official Notice in Formal Administrative Hearings, 1971 Duke L.J. 1, 43 (1971)." (Emphasis added.) Levinson v.Board of Chiropractic Examiners, supra, 211 Conn. 532-33.
This court disagrees with the plaintiff's argument because the Board was allowed to use its expertise and specialized knowledge to evaluate the evidence, and the Board was allowed to determine the standard of care. The plaintiff points to no"material" that was officially noticed. The plaintiff merely states the bare conclusion that the Board must have relied on information other than that presented.
The final argument of the plaintiff that the court will address is whether the discipline ordered by the Board was unreasonably harsh. This court cannot substitute its judgment for that of the Board, but must look to see whether the record before the Board supported the action taken. See Miko v.Commission on Human Rights Opportunities, supra, 220 Conn. 201. General Statutes § 20-29 and 19a-17 authorizes the State Board of Chiropractic Examiners to discipline chiropractors — this includes CT Page 5253-N suspension and civil penalties. The court finds that the Board did not act unreasonably, arbitrarily, illegally, or in abuse of its discretion when it ordered the punishment on the plaintiff. See Connecticut Light Power v. Dept. of Public Utility Control,
supra, 219 Conn. 57-58; see also General Statutes § 4-183(j)(6). As such, the disciplinary order must stand.
VII. CONCLUSION
For the reasons set forth above, pursuant to General Statutes § 4-183(j), the court affirms the actions of the Board. Accordingly, the court denies the plaintiff's appeal.[4]
COPPETO, J.